**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| GLYNESE HILTON, | |
| Plaintiff, | |
| v. | Civil Action No. 11-cv-02241-AW |
| YOON S. SHIN *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Glynese Hilton brings this action against Defendants Transcom, Inc. and Yoon S. Shin. Plaintiff asserts claims for sexual harassment and retaliation in violation of Title VII and the Prince George's County Code. Pending before the Court is Defendants' Motion to Dismiss. The Court has reviewed the entire record and deems no hearing necessary. For the reasons stated herein, the Court **DENIES** Defendants' Motion to Dismiss.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The Court derives the following factual recitation from Plaintiff's Complaint. The Court assumes, as it must, the truth of these facts to rule on the instant Motion to Dismiss.

This case arises out of a former employment relationship between Plaintiff Glynese Hilton and Defendant Transcom, Inc. (Transcom). Transcom is a transportation company that provides transportation services to the United States Department of Homeland Security (DHS). In May 2008, based on prior experience as a limousine operations manager, Transcom hired

1

Hilton to manage its executive sedan service for the DHS. Defendant Yoon S. Shin is Transcom's president.

Hilton performed her job admirably at the outset of her employment with Transcom. In recognition of her success, she received, inter alia, a 15% raise, a Christmas bonus, and a plaque of honor.

In January 2010, Shin started pressuring her for sex. On one occasion, Shin placed his hand on Hilton's lap and confessed to being attracted to her. Even though Hilton immediately removed his hand, Shin told Hilton that he wanted to have lunch with her at her house. Hilton declined this invitation. Shortly afterwards, Shin approached Hilton in Transcom's company garage. There, Shin told Hilton that she made him feel like a different person and asked her for a kiss. Hilton declined Shin's advance, whereupon Shin asked her for a hug.

Sometime later, Shin started touching Hilton at work, such as by allowing his hand to rest momentarily on her shoulder and upper arm. Hilton told Shin that he was making her uncomfortable by suggesting that she was an easy catch and should date him.

On February 12, 2010, Shin sent Hilton a series of emails asking her to meet with him. Allegedly, the purpose of this email chain was to "draw her into the office alone on Valentine's Day." Doc. No. 1 ¶ 22. Shin closed one of these emails with "XOXO," which Hilton alleges is slang for "Kiss-Hug-Kiss-Hug." *Id.* Two days later, Hilton emailed Shin and told him that she would not meet him at the office. *Id.* ¶ 23. Shortly thereafter, Shin called Hilton on her cell phone. Allegedly, Shin expressed anger at the fact that Hilton had declined to meet him in the office. *Id.* ¶ 24.

A few days later, Shin wrote Hilton an email in which he stated the following:

> . . . you treated me as a piece of trash over the weekend . . . I got you beautiful flowers – 2 dozen long stem roses with baby breath and fern all around it, by the way it was beautifully arranged and huge – that Sunday but it didn't reach its owner, so I threw it away and my personal feelings towards you got thrown away along with it. From now on, I'm nothing more than your employer as you're nothing more than an employee…I guess that's what it should have been always.

*Id.* ¶ 25.

Sometime thereafter, Plaintiff alleges that she noticed a distinct difference in the way Shin treated her at work. Hilton alleges that Shin became "cold, distant, and uncommunicative" with her. *Id.* ¶ 26. Approximately three months later, Shin gave Hilton an annual performance review that, in Hilton's estimation, was undeservedly unfavorable. *See id.* ¶ 28. In summer/fall 2010, Hilton alleges that Shin engaged in a course of conduct that reeks of retaliatory animus. *See id.* ¶¶ 29–34. On October 18, 2010, Defendants fired Hilton. *Id.* ¶ 35.

Hilton received a right-to-sue-letter in June 2011. In August 2011, she filed the instant Complaint. The Complaint contains four Counts. Counts I and II assert claims for, respectively, sexual harassment and retaliation in violation of Title VII. For their part, Counts III and IV assert claims for, respectively, sexual harassment and retaliation in contravention of the Prince George's County Code.

On September 20, 2011, Defendants filed a Motion to Dismiss. Doc. No. 6. Defendants raise two arguments therein. The first is that Hilton's Title VII retaliation claim fails as a matter of law because Hilton failed to adequately allege that she "opposed" a practice that Title VII makes unlawful. The second is that the Prince George's County Code does not recognize a cause of action for retaliation. Hilton responded and Defendants replied. In their reply brief,

Defendants acknowledge that "there may be a provision in the Prince George's County Code that does address retaliation, namely Sec. 2-209." Doc. No. 8 at 14. The Court agrees that this provision creates retaliation claims. Therefore, the central issue is whether Hilton has stated a cognizable claim for retaliation under Title VII.

## II.   STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery. *Id.* at 511–12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery, "it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewicz* is consistent with *Twombly*'s facial plausibility standard).

### III.  LEGAL ANALYSIS

To state a prima facie case of retaliation under Title VII, a plaintiff must establish: "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection exist[s] between the protected activity and the adverse employment action." *Tasciyan v. Med. Numerics*, 820 F. Supp.2d 664, 675 (2011) (citing *Davis v. Dimensions Health Corp.*, 639 F. Supp.2d 610, 616–17 (D. Md. 2009)). "An employee may satisfy the first element by showing that she opposed a practice that Title VII prohibits." *Id.* (citing *Davis*, 639 F. Supp.2d at 617). Furthermore, "the plaintiff must have a reasonable and good faith belief that the conduct [] she opposes constitutes unlawful discrimination under Title VII." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)).

Defendants challenge just the opposition element. In other words, the issue is whether Hilton has stated a facially plausible claim that she "opposed" sex discrimination.

"The opposition clause makes it 'unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by this subchapter.'" *Crawford v. Metro. Gov't of Nash. & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (quoting 42 U.S.C. § 2000e-3). "The term oppose, being left undefined by the statute, carries its ordinary meaning, . . . to resist or antagonize . . . ; to contend against; to confront; resist; withstand[.]" *Id.* (citations and internal quotation marks omitted). "Although these actions entail varying expenditures of energy, resist frequently implies more active striving than oppose." *Id.* (citation and internal quotation marks omitted).

In *Crawford*, the Supreme Court reversed the Sixth Circuit's decision that the plaintiff had failed to oppose an unlawful employment practice within the meaning of § 2000e-3. *Id.* at 275. The dispute started when a human resources officer asked the plaintiff, Vicky Crawford, whether she had witnessed an employee behave in a sexually inappropriate manner. *Id.* at 273–74. Crawford described several instances of sexually harassing behavior. *Id.* at 274. The employer fired Crawford soon after she spoke with the human resources manager. *Id.*

Crawford sued for retaliation, and the district court granted the employer's motion for summary judgment. *Id.* at 274–75. The district court reasoned that Crawford had failed to oppose an unlawful employment practice because she had "merely answered questions by investigators . . . in an . . . investigation . . . initiated by someone else." *Id.* at 275. The Sixth Circuit affirmed on substantially the same grounds. *See id.*

The Supreme Court reversed, holding that Crawford's conduct constituted opposition within the meaning of Title VII. *See id.* at 276–80. In so holding, the Court characterized

Crawford's conduct as "an **ostensibly disapproving** account of sexually obnoxious behavior." *Id.* at 276 (emphasis added). The Court further reasoned that "'[o]ppose' goes beyond 'active, consistent' behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it." *Id.* at 277. In other words, "[t]here is . . . no reason to doubt that a person can 'oppose' by responding to someone's else's question just as surely by provoking the discussion." *Id.* For example, an employee may oppose an unlawful employment practice by "refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Id.* (citation omitted). Therefore, minimally, a plaintiff may state a cognizable retaliation claim by alleging that she expressed to her employer ostensible disapproval of sexually obnoxious behavior. *Cf. id.* 276–80.

The principles that *Crawford* enunciates compel the conclusion that Hilton has stated a cognizable retaliation claim. The Complaint satisfactorily states that Hilton expressed to her employer ostensible disapproval of sexually obnoxious behavior. Starting in January 2010 and continuing into February 2010, Hilton alleges that she repeatedly "declined" Shin's sexual overtures. Although some of these "declinations" lack elaboration, the allegations surrounding them are sufficiently detailed to support the inference that Hilton ostensibly disapproved of Shin's overtures. In response to these overtures, Hilton alleges that she engaged in the following activity: removing Shin's hand from her lap; declining to kiss him; telling Shin that these overtures were making her uncomfortable; and refusing to meet with him alone on or around Valentine's Day. If refusing a supervisor's order to fire someone for discriminatory reasons constitutes opposition, it would seem to follow that refusing to submit to the sexual pressures of the company president constitutes opposition, especially for the purpose of a motion to dismiss. For similar reasons, the Complaint adequately alleges that Hilton had a reasonable and good faith

belief that the alleged harassment violated Title VII. In short, the Complaint contains several allegations of sexually inappropriate conduct, such as lewd touching, requests for kisses and hugs, and email communications in which Shin states that he had "personal feelings" for Hilton.

Defendants' primary argument is that, as a matter of law, an employee cannot oppose sexual harassment simply by spurning it. *See* Doc. No. 6-1. Defendants peg Hilton's retaliation claim as a sexual harassment claim in disguise, contending that she "re-asserts identical allegations that are the basis of her Count I claim for [sexual harassment]." Doc. No. 2. In coming to this conclusion, Defendants rely heavily on *Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 747–49 (D. Md. 2003). The *Rachel-Smith* court held that, for an employee's activity to arise to opposition, she must "[speak] out" against a practice, such as by communicating to the employer that "she believed his advances to be illegal." *Id.* at 748.

The Court has reviewed *Rachel-Smith* and has concluded that it inaccurately states the law of retaliation. Perhaps this is unsurprising considering that *Rachel-Smith* was decided in 2003, approximately six years before *Crawford* came down. As *Crawford* makes clear, however, an employee may oppose an unlawful practice for Title VII purposes simply by expressing ostensible disapproval of it to her employer in response to the employer's investigation. In a nutshell, *Rachel-Data*'s "speaking out" standard parallels the "active opposition" standard that the *Crawford* repudiated.

Defendants' suggestion that ruling for plaintiff will enable plaintiffs to piggyback retaliation claims onto sexual harassment claims is unpersuasive. The "unwelcome" element of the prima facie case for sexual harassment claims is generally less exacting than the "opposition" element of the prima facie case for retaliation claims. Furthermore, to prevail on retaliation claims, plaintiffs must show both that they suffered a materially adverse action and that the

employee's opposition caused the materially adverse action. It is easy to envision scenarios in which plaintiffs successfully establish that an employer's unwelcome conduct creates a hostile work environment, yet fail to establish that the refusal to submit to sexual advances caused one or more of the materially adverse actions at issue.

Additionally, in raising the specter of runaway liability for retaliation, Defendants overlook the unique facts of this case. This case, unlike many sexual harassment cases, does not involve a mid-level manager or supervisor, but rather, the president of the company. In many garden-variety sexual harassment cases, avenues exist whereby the plaintiff can bypass the immediate harasser and lodge a complaint with a higher-ranking company official. Here, seeing that Shin is the president of Transcom, it is not readily apparent that such an alternative route existed. What is more, Plaintiff alleges that she repeatedly rebuffed Shin's sexual overtures over a month-and-a-half period. Thus, ruling in plaintiff's favor does not threaten to usher in a regime in which opposition comprehends the faintest refusal to submit to sexual solicitation.

In sum, Hilton has stated a cognizable retaliation claim. The Complaint's allegations are adequately detailed and support the inference that Hilton can satisfy the elements of the prima facie case for retaliation under Title VII. For the same reasons, Hilton has stated a facially plausible retaliation claim under the Prince George's County Code. Therefore, the Court denies Defendants' Motion to Dismiss.

IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss. A separate Order will follow, and the Court will issue a Scheduling Order.

| April 30, 2012 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |